PENSMORE INVESTMENTS, LLC, Respondent, v GRUPPO, LEVEY & Co. et al., Defendants, and WENDY LEVEY, Intervenor-Appellant. WENDY LEVEY, Appellant, v PENSMORE INVESTMENTS, LLC, Respondent, et al., Respondents. [29 NYS3d 1]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about April 23, 2015, which, to the extent appealed from as limited by the briefs, denied petitioner Wendy Levey's motion to intervene, and dismissed the petition to, inter alia, stay any efforts by plaintiff, Pensmore Investment, LLC, to seize assets in which petitioner had an interest, unanimously modified, on the law and the facts, the motion granted, and the petition reinstated as to the fourth, fifth and sixth causes of action, and otherwise affirmed, without costs. Order, same court and Justice, entered on or about May 19, 2015, which, inter alia, granted plaintiff's application for a turnover order, directing the sheriff to hold an auction and sale and to hold the proceeds in escrow, unanimously modified, on the law and the facts, to vacate the turnover order and the direction of an auction and sale, the matter remanded for further proceedings in accordance herewith, and as so modified, affirmed, without costs.

Pensmore seeks, pursuant to CPLR 5225, enforcement of a money judgment it obtained against Hugh Levey. The judgment was the result of a settlement made by Hugh to personally guarantee a debt owed by codefendant Gruppo, Levey & Co. Pensmore then obtained a turnover order, requiring Hugh to turn over his personal property in satisfaction of his debt. The turnover order included personal property claimed to belong to Hugh that was located in former residences he once shared with petitioner, his estranged wife. Wendy sought leave to intervene in this enforcement proceeding and separately commenced a second proceeding before the same court, claiming that the property Pensmore seeks to have turned over does not belong to Hugh, but is her separate property. The overlapping relief primarily sought by Wendy in both proceedings is a permanent stay of the enforcement of the turnover order and a declaration that Wendy is the sole owner of certain personal property. Hugh and Wendy are also adversaries in a pending divorce action.

We find that under the circumstances presented in this case the trial court should have allowed Wendy to intervene and should have held a hearing to determine whether the personal property on which Pensmore seeks to have the Sheriff levy is Wendy's separate property.

As a preliminary matter, we agree with Wendy that because Hugh was not in physical possession of the property which is the subject of the turnover order, the enforcement proceeding should have been brought as a special proceeding pursuant to CPLR 5225 (b). Wendy was required to have been named as a party and separately served with the petition, because she is the one in actual possession of the disputed property (Richard C. Reilly, Supp Practice Commentaries, McKinney's Cons Law of NY, Book 7B, CPLR C5225:5). Although Pensmore did not properly name Wendy, the error could have been cured by permitting Wendy to intervene, so long as the burden of proof remained on the judgment creditor (Pensmore) to establish that the judgment debtor (Hugh) has an interest in the property that is superior to the person in actual possession (Wendy) (see Petrocelli v Petrocelli Elec. Co., Inc., 121 AD3d 596 [1st Dept 2014]).

The trial court was required to hold a hearing to determine whether the personal property in Wendy's possession is her sole separate property or marital property. The personal property in this case is located in each of Hugh and Wendy's two former marital residences, an apartment in Manhattan and a home in Connecticut. For several years, only Wendy has

occupied those residences. Wendy claims that most of the contents, including jewelry, silverware, furs, furnishings and artwork, is her separate property, primarily because it was received by her from her mother and/or grandmother by gift or devise. In the case of certain artwork, she claims it was assigned to her by Hugh in 1991,* years before he personally guaranteed the debt underlying the instant judgment. Wendy is not claiming that the property Pensmore seeks to levy on is "marital property" in which she has an inchoate right to equitable distribution. Rather she is claiming that the property is not marital at all, but separate property that she acquired by bequest, devise, or descent, or gift (Domestic Relations Law § 236 [B] [1] [d]). In this regard she argues that Hugh is only too happy to stand mute while Pensmore uses her property to satisfy debt in his individual name.

Although the court permitted Wendy an opportunity to bring in documentation demonstrating ownership, the court ultimately denied all of the requested relief, finding that the property is "marital property" which is not protected against the reach of creditors until after it is distributed in a divorce action. While we agree that an inchoate right to equitably share in marital property cannot be protected against third party creditors of a debtor spouse (*see Hallsville Capital, S.A. v Dobrish*, 87 AD3d 933 [1st Dept 2011]), the same rule does not hold true for separate property of the non-debtor spouse. Domestic Relations Law § 236 [B] provides that "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held" is marital property (Domestic Relations Law § 236 [B] [1] [c]; *see Fields v Fields*, 15 NY3d 158, 162 [2010]). There is an exception, however, for "property acquired before marriage or property acquired by bequest, devise, or descent, or gift from a party other than the spouse"; such property is the separate property of that spouse (Domestic Relations Law § 236 [B] [1] [d] [1]; *see Fields v Fields*). Separate property, is not "marital property" and it is not equitably distributed in a divorce action (*see Tatum v Simmons*, 133 AD3d 550 [1st Dept 2015]; *Spielfogel v Spielfogel*, 96 AD3d 443 [1st Dept 2012], *lv denied* 21 NY3d 978 [2013]; *Epstein v Epstein*, 289 AD2d 78 [1st Dept 2001]). Although neither spouse

---

* When Hugh filed for bankruptcy in 1993, he filed a statement with that court stating he had no interest in the artwork, and that it belonged to Wendy. She claims the artwork was assigned to her in satisfaction of a $1 million loan she made to Hugh, which he defaulted on and she foreclosed on.

has a vested interest in any property that is otherwise marital until it is distributed in a divorce action, separate property, unless transmuted or commingled, retains its character as the property of the spouse who owns it both during and after the marriage (*see Wiener v Wiener*, 57 AD3d 241 [1st Dept 2008]; *Shai v Shai*, 301 AD2d 461 [1st Dept 2003]).

Without a hearing, the trial court concluded that all of the personal property in the residences was "marital property." The trial court's conclusion was based upon the rebuttable presumption that property acquired during a marriage is marital (*Fields* at 163) and the lack of documentary evidence establishing Wendy's individual ownership. In denying Wendy's petition, the court observed that she did not provide any documentary proof of her ownership and that certain items, even if devised to her, were not specifically identified in any testamentary document.

The property at issue, however, is tangible personal assets, which are not typically titled assets (e.g., a fur coat, furniture, silverware, etc.). Wendy has put before the court her own affidavit specifically identifying assets she was gifted or received by devise. She put in her mother's last will and testament, which, although not having a schedule of specific items, generally bequeaths personal effects and property to Wendy. She has included a 1996 letter from an attorney who filed the gift tax return for her grandmother's estate, referring to the items of tangible personal property distributed to Wendy and other heirs as part of that estate. She has put in documents showing that Hugh did not claim any of the items she identified as belonging to him in a personal bankruptcy petition he filed.

There are circumstances when testimony alone can be a sufficient basis to establish ownership of property (*Spielvogel* at 444). A bequest of personal property can be part of the residue of a will after all specific gifts have been made. Thus, the absence of a personal property schedule in a will does not disprove a bequest of personal property where, as here, there is a residuary clause. Proof of inter vivos gifting does not necessarily require documents, so long as there is evidence of an intent to make a gift, delivery and acceptance (*see Gruen v Gruen*, 68 NY2d 48 [1986]; *In re Corn's Estate*, 141 NYS2d 16 [Sur Ct, Kings County 1955]; *In re Woodin's Estate*, 36 NYS2d 448 [Sur Ct, NY County 1942]). Wendy's proof on the issue of ownership may not have been conclusive, but it was enough to warrant a hearing. The informal process by which the court allowed Wendy to present documents did not suffice under these circumstances. Although Hugh obtained home insurance cover-

age for the contents of both former marital residences, this proof is not dispositive of ownership/title of the contents. The credibility of the witnesses' claims and the weight to be given any of the circumstantial documentary evidence proffered should be assessed at a hearing.

We agree, however, with the trial court that insofar as the petition sought relief under the Debtor and Creditor Law, the petition was properly dismissed. Hugh's co-guarantor raised the same defense, lack of consideration for the personal guaranty, which the trial court rejected because it was in connection with a settlement agreement, constituting consideration for the guaranty (see Sun Oil Co. v Heller, 248 NY 28 [1928]). Wendy's argument is indistinguishable. Her claims regarding the debt and its effect on distribution of marital assets between her and Hugh belong in the divorce action.

We have considered petitioner's remaining arguments and find them without merit. Concur—Tom, J.P., Sweeny, Gische and Kapnick, JJ.